FILED

JAN 29 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-15-1189-KiGD |
| ) | |
| EDWARD S. AHN and HELEN AHN, ) | Bk. No.   2:13-bk-15807-WB |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| FIRST INTERCONTINENTAL BANK, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| EDWARD S. AHN; HELEN AHN; ) | |
| CINDY AHN; CHRISTINA AHN; ) | |
| CHONG IM PARK; OFFICIAL ) | |
| COMMITTEE OF UNSECURED ) | |
| CREDITORS; BBCN BANK; BEST ) | |
| BEST & KRIEGER, LLP; HANMI ) | |
| BANK, ) | |
| ) | |
| Appellees. ) | |
| ) | |

Argued and Submitted on January 21, 2016,
at Pasadena, California

Filed - January 29, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

Appearances:     Raymond H. Aver argued for appellant First
Intercontinental Bank; Robyn B. Sokol of Ezra
Brutzkus Gubner LLP argued for appellees Edward S.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. <u>See</u> 9th Cir. BAP Rule 8024-1.

Ahn and Helen Ahn.[2]

Before: KIRSCHER, GAN[3] and DUNN, Bankruptcy Judges.

First Intercontinental Bank ("FIB") appeals an order approving a motion to compromise controversy with certain members of debtors' family, who were alleged to have received various preferential and/or fraudulent transfers subject to avoidance and recovery by the estate. In turn, chapter 11[4] debtors Dr. Edward and Helen Ahn ("Debtors") have moved to dismiss the appeal as moot and request attorney's fees.[5] We DISMISS the appeal as MOOT. Debtors' request for attorney's fees is DENIED.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

The history between FIB, Debtors and their related entities is long and contentious. In 2011, FIB filed suit against Debtors

---

[2] By a clerk's order entered on October 21, 2015, appellees Christina Ahn, Cindy Ahn, Chong Im Park, Official Committee of Unsecured Creditors, BBCN Bank, Best Best & Krieger LLP and Hamni Bank were given until November 4, 2015, to file an appeal brief. They did not do so. Therefore, they waived their right to file a brief and to appear at oral argument.

[3] Hon. Scott H. Gan, Bankruptcy Judge for the District of Arizona, sitting by designation.

[4] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[5] Debtors also request that we take judicial notice of thirteen documents filed in either the main bankruptcy case or the related adversary proceeding. That request is GRANTED as to the existence of the documents on the court's docket and their contents, but not to establish the truth of extrajudicial facts contained in any particular document. See Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer), 95 B.R. 143, 146-47 (9th Cir. BAP 1988).

-2-

and their entity AEHCC, LLC for breach of certain loan agreements and for breach of guaranty. FIB prevailed and was awarded a judgment on February 19, 2013, against AEHCC and Debtors jointly and severally for $2,264,364.94. Prior to this, in 2008, a group of Korean entities collectively referred to as Hanil had successfully sued Debtors and obtained judgments against them.

During their marriage, and prior to the petition date, Debtors made several transfers to their adult daughters, Christina Ahn ("Christina") and Cindy Ahn ("Cindy"),[6] and to Mr. Ahn's sister, Chong Im Park ("Park").

**1.    The transfers at issue**

**a.    Debtors' transfer of their home to Christina and Cindy**

Prior to the petition date, Debtors owned a residence in Chatsworth, California ("Home"). In September 2010, Debtors transferred their interest in the Home to Christina and Cindy for $1,480,000. In exchange, Christina and Cindy executed an unsecured promissory note for $883,000 in favor of Debtors ("Home Note") and assumed the first and second mortgages, which totaled $596,200. Debtors did not reside in the Home after the transfer.

On May 10, 2011, Christina, Cindy and Debtors signed an agreement ("Home Note Reduction") wherein the parties agreed the outstanding principal amount of the Home Note was reduced to $400,000. The Home Note Reduction further provided that Christina's and Cindy's obligations under the Note were secured by the Home, and that the Home Note could be sold or assigned to a

---

[6] We refer to Christina and Cindy by their given names to avoid any confusion. No disrespect is intended.

-3-

third party. Debtors contended the Home Note Reduction occurred as a result of a recent appraisal, which demonstrated that the Home's value at the time of the sale to Christina and Cindy was substantially less than the sale price of $1,480,000.

**b. Debtors' stock transfers to Christina and Cindy**

For at least ten consecutive years prior to the 2013 petition date, Debtors transferred shares of Hanil Development, Inc. to Christina and Cindy. Each daughter received 5,000 shares at the end of 2009 and 2010, and each received 6,000 shares at the end of 2011 and 2012 (the "Stock Transfers").

On February 28, 2013, just one week prior to the petition date, Debtors gave Christina and Cindy a security interest in FIB stock worth $129,080. In return, Debtors received $40,000 cash.[7]

**c. Debtors' transfer of C&C Development Investments, LLC to Christina and Cindy**

In January 2011, Debtors, Christina and Cindy formed C&C Development Investments, LLC. Christina and Cindy initially each owned 30% of C&C; Debtors owned 40%. C&C does not own any real property but is a party to a long-term lease of two acres of commercial land in San Diego. In April 2011, just under two years prior to the petition date: (1) Mrs. Ahn sold a 10% stake in C&C each to both Christina and Cindy for $15,000 each; and (2) Mr. Ahn sold a 5% stake each to both Christina and Cindy for $7,500 each. Subsequently, Mr. Ahn sold another 5% stake each to both Christina and Cindy for $10,000 each (collectively, "C&C Transfers"). Thus, Debtors had transferred their entire interest in C&C prior to the

---

[7] It was disputed whether Debtors actually transferred the FIB stock certificates to Christina and Cindy.

-4-

petition date. A $1.5 million lien exists against C&C's assets, which Debtors contended existed at the time of the C&C Transfers.

### d. Debtors' transfers to Park

On November 10, 2010, in connection with borrowing $150,000 from Park, Debtors signed a promissory note for $150,000 in Park's favor ("Park Note"). On May 13, 2011, Park signed an amendment to the Park Note, which extended its term through December 31, 2012, and consented to the terms of the Home Note Reduction. On September 12, 2012, Debtors transferred their interest in the Home Note to Park, extinguishing their liability on the Park Note. On September 21, 2012, the underlying collateral for the Park Note was changed from the Home Note to a deed of trust in favor of Park against the Home. Park's DOT was recorded one week prior to the petition date.

## B. Postpetition events

Debtors filed their chapter 11 bankruptcy case on March 6, 2013, just two weeks after FIB obtained its judgment. Shortly thereafter, creditors Hanil, Hamni Bank and FIB were appointed to serve on the Official Committee of Unsecured Creditors. FIB is Debtors' largest unsecured creditor.

### 1. Settlement with Hanil

Prior to the instant compromise motion, Debtors had reached a settlement with Hanil, which netted Debtors' estate $326,000.

### 2. The 9019 Motion

After its appointment, the Committee investigated Debtors' prepetition transfers to determine whether they were preferential or fraudulent and therefore subject to avoidance and recovery by the estate. The Committee also engaged in discussions with

Christina, Cindy and Park. Debtors did not participate in any settlement negotiations, but rather only became involved after the settlement had been reached.

On March 19, 2015, Debtors filed their "Motion to Approve Settlement Among the Official Committee of Unsecured Creditors, the Debtors, Cindy Ahn, Christina Ahn and Chong Im Park" ("9019 Motion"). Despite the motion's title, the Committee was not a party to the Settlement Agreement; rather, Victor Sahn, counsel for the Committee, was a signatory.

According to the Settlement Agreement, the parties agreed to settle Debtors' alleged fraudulent transfer claims against Christina, Cindy and Park (collectively, the "defendants") for $200,000. Debtors contended the settlement was fair, reasonable and in the best interests of the estate; the estate would obtain $200,000 and avoid the risk and cost of two avoidance actions — one against Christina and Cindy, and one against Park. Christina and Cindy had presented arguable defenses to any alleged actual or constructive fraudulent transfers, including: in some instances no recoverable transfer had taken place; reasonably equivalent value had been given for certain transfers; Debtors were not insolvent at the time of such transfers; and the transfers in part were regular gifts of assets made by Debtors to their adult daughters. Upon careful consideration of the estate's claims against the defendants and the factors under A&C Properties,[8] Debtors asserted that rather than risk costly and questionable litigation, it was in the estate's and creditors' best interest to

---

[8] Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1381 (9th Cir. 1986).

resolve the dispute against the defendants for $200,000.

In support of the 9019 Motion, Debtors offered a declaration from Mr. Sahn, counsel for the Committee. Mr. Sahn asserted that while the estate had significant claims against the defendants and would likely prevail on some of them, the defendants possessed credible defenses and it was possible the estate would not prevail in avoiding and recovering all of the transfers. Mr. Sahn opined that settling the estate's claims against the defendants for $200,000 was "in the interest of all creditors" and was a "fair and reasonable exchange for the release of such claims."

### a.  FIB opposes the 9019 Motion

FIB objected to the 9019 Motion on five grounds:  (1) the proposed settlement was not in the best interest of creditors and was not fair and equitable, because the estate would likely prevail in an avoidance action against the defendants and recover "up to twenty times the amount of the proposed settlement;" (2) litigation would not be particularly complex and would not create significant expense to the estate; (3) collection concerns were minimal because recovery consisted of real property and stock; (4) the Committee did not authorize or approve the Settlement Agreement; and (5) FIB was willing to investigate the fraudulently transferred assets and to file a complaint against the defendants to recover them.

In reviewing the A&C Properties factors, FIB contended that litigation would likely be successful.  The evidence supported that the Stock Transfers were, at minimum, constructively fraudulent because no consideration was provided and Debtors were likely insolvent at the time.  As for the FIB stock transfer, FIB

-7-

argued that several "badges of fraud" existed to show that it was intentionally fraudulent: Debtors transferred it just one week prior to the bankruptcy filing and little consideration ($40,000) was given for $129,080 worth of stock.

As for the Home transfer, FIB argued that Debtors were likely insolvent at the time of the transfer or knew they soon would be based on the FIB litigation and subsequent judgment. Plus, it was unknown whether and how Christina, a schoolteacher, and Cindy, who worked at a bank, made any payments under the Home Note or could afford to make payments. FIB made similar "badges of fraud" arguments respecting the Home Note Reduction. FIB further contended that Debtors' giving away their secured interest in the Home Note worth $400,000 to Park, who was owed only $150,000, was not reasonably equivalent value. Therefore, argued FIB, because the Home transfer was avoidable, the transfer to Park would be an avoidable preference.

FIB argued that collection concerns would be minimal, because a successful fraudulent transfer action against Christina and Cindy would result in the avoidance of the transfer of (1) the Home, (2) the Hanil stock, (3) the FIB stock, and/or (4) the 40% interest in C&C. Likewise, a successful action against Park would result in an avoidance of the transfer of the Home. FIB claimed the Home was currently worth $2.4 million, which could potentially net the estate $1.4 million if the Home were sold.

FIB argued that litigation would not be particularly complex, considering that much of the investigatory work had already been done. Further, FIB's attorney had been in ligation with Debtors for over fifteen years, so he had conducted many investigations of

-8-

their family and taken numerous depositions of Debtors.

Finally, FIB argued that the Settlement Agreement was not in the best interest of creditors. Debtors' estate had significant claims to avoid and recover fraudulently transferred assets, which could result in a recovery up to $4 million, and FIB was willing to undertake the expense of that litigation.

### b. Mr. Sahn's response on "behalf" of the Committee and Debtors' reply

In response to FIB's opposition, Mr. Sahn contended that FIB **was** informed about the potential for settlement with defendants; one of FIB's attorneys spoke directly with his firm about the potential settlement prior to the 9019 Motion being filed. Mr. Sahn argued that even though FIB said it was willing to pursue an action against the defendants, nowhere in its opposition did FIB say it was prepared to pay the estate more than the proposed $200,000. Mr. Sahn argued that FIB should bring a check for $300,000 to the hearing.

In his supporting declaration, Mr. Sahn explained that he was asked by counsel for Debtors and the defendants to participate in negotiations among the parties in an attempt to resolve the estate's claims against defendants. During this time, he was able to obtain from defendants a stipulation to extend the statute of limitations for filing an action against them until June 6, 2015, which the bankruptcy court approved. Mr. Sahn further explained, that over many months, he had asserted the estate's theories of recovery against the defendants and they had responded with a memorandum setting forth their defenses and position as to why litigation would not be successful. Based upon his understanding

of the facts and circumstances, Mr. Sahn believed the proposed settlement was in the best interest of creditors.

In their reply, Debtors contended FIB's analysis that the estate could recover $4 million was flawed. First, none of the existing claims would result in recovery of the Home, as that transfer was made to Christina and Cindy for fair market value. The Home Note Reduction was supported by an appraisal, but even assuming Christina and Cindy did not give reasonably equivalent value for it, the most that could be recovered was $480,000, and it would take a tremendous amount of legal fees and time to obtain a judgment, which was not certain.

Second, Debtors claimed the FIB stock was not properly transferred to Christina and Cindy. No one could provide the stock certificate allegedly transferred to secure the $40,000 loan. The estate currently held all of Debtors' FIB stock (64,338 shares valued at $447,149.10), including the shares allegedly transferred to Christina and Cindy, which the estate planned to liquidate. Thus, no avoidance action existed as to that stock.

Third, argued Debtors, the leasehold owned by C&C had questionable value. Furthermore, Christina and Cindy paid money for the interests in C&C they purchased.

Fourth, Debtors argued that avoiding the Stock Transfers would result in little recovery to the estate, after taking into account legal fees and costs. The Hanil stock was valued at $2.26/share, so the most the estate could gain was $99,440 (44,000 shares @ $2.26/share). In any event, argued Debtors, FIB could not recover that stock as it was sold to Hanil as part of the Hanil settlement.

Fifth, argued Debtors, the claims against Park were weak. The DOT to Park was provided by Cindy, not Debtors. Therefore, unless FIB could avoid the Home transfer, it would not be able to avoid Cindy's DOT transfer to Park secured by the Home.

Finally, Debtors argued that if FIB believed the estate's claims against defendants were worth up to $4 million, then it could offer to purchase them from the estate for $300,000 at the hearing. So far, FIB had not presented any such offer.

### c. Joinders of other unsecured creditors in FIB's opposition

Joinders to FIB's opposition to the 9019 Motion were filed by four of Debtors' largest unsecured creditors: Best Best & Krieger, LLC (holding a claim for $53,000); Hamni Bank (holding a claim for $200,443.38); BBCN Bank (holding a claim for $675,000); and Choice Hotels International, Inc. (holding a claim for $149,328.87).

### d. Recusal of Judge Brand

After Judge Brand recused herself from hearing the 9019 Motion because of a personal conflict, the 9019 Motion was set to be heard by Judge Sandra R. Klein on May 20, 2015. No further briefing was allowed or would be considered.

### e. The bankruptcy court's ruling on the 9019 Motion

The bankruptcy court issued its tentative ruling on May 19, 2015, indicating its intent to approve the 9019 Motion.

The hearing went forward on May 20, 2015. FIB contended that Mr. Sahn had acted in a "renegade" capacity when he entered into the Settlement Agreement with defendants without the Committee's knowledge or approval. Nonetheless, counsel expressed his belief

-11-

that Mr. Sahn had negotiated with Debtors and the defendants in good faith. In discussing the best interest of creditors, counsel for FIB noted that between the administrative claims of counsel for Debtors and the Committee, the $200,000 would be exhausted and general unsecured creditors would receive nothing. In response, the bankruptcy court inquired why none of this information was in FIB's opposition papers.

As for the argument that FIB should purchase the estate's claims, counsel represented that FIB had been investigating that possibility, but because FIB was a regulated institution it had to obtain a nonobjection from the FDIC and the Georgia Department of Banking and Finance to spend the $200,000. Counsel informed the court that according to a May 15, 2015 letter from regulatory counsel, a conference call with those agencies was scheduled for today, and a nonobjection answer was anticipated within one week. As such, counsel requested a brief continuance. The bankruptcy court denied that request, noting that FIB's actions were "a little too little too late." Hr'g Tr. (May 20, 2015) at 26:13-14.

After hearing additional argument from Debtors' counsel and the joinder creditors, one of whom questioned the good faith of the negotiations, the bankruptcy court announced it was adopting its tentative ruling as its final ruling and approving the 9019 Motion. The bankruptcy court found that in accordance with A&C Properties, the settlement was fair and equitable and the result of good-faith negotiations between the parties.

The order approving the 9019 Motion was entered on May 28, 2015 ("9019 Order").

/ / /

-12-

### 3. FIB's motion to reconsider and stay the 9019 Order pending reconsideration

On June 1, 2015, FIB filed a motion for reconsideration and stay pending reconsideration of the 9019 Order, along with an application for order shortening time. FIB contended good cause existed to vacate the 9019 Order and stay enforcement of the Settlement Agreement because FIB had obtained the non-objection from its regulators to bid $210,000 for the estate's claims against defendants. FIB was also prepared to pay the estate 10% of any net recovery, after reimbursement of the proposed $210,000 purchase price and payment of FIB's attorney's fees and costs incurred in litigation.

Debtors opposed the motion to reconsider, contending that FIB's willingness and ability to offer $210,000, which was inadequate in any event, was not sufficient grounds justifying reconsideration. The bankruptcy court summarily denied FIB's shortening time request, ruling that the motion could be heard on regular notice.

### 4. FIB appeals the 9019 Order

On June 10, 2015, FIB filed its notice of appeal of the 9019 Order. Because Debtors have moved for dismissal of this appeal as moot, we review post-appeal events to make that determination.

## C. Post-appeal events

### 1. Adversary proceeding against defendants

Because the stipulated time to file an adversary complaint against defendants was set to expire on June 6, 2015, the Committee filed an avoidance action alleging twenty claims for

-13-

relief against defendants on June 4, 2015.

**2. The multiple stay motions filed by FIB**

**a. FIB's emergency motion for stay pending appeal before the BAP**

On June 10, 2015, while FIB's motion for reconsideration of the 9019 Order and stay pending reconsideration request was still pending before the bankruptcy court, FIB moved for stay pending appeal of the 9019 Order with the BAP. The Panel denied FIB's stay motion without prejudice, finding it appropriate for the bankruptcy court to first rule on FIB's pending stay motion.

**b. FIB's emergency motion for stay pending appeal before the bankruptcy court**

On June 16, 2015, and with its other stay request still pending, FIB filed an emergency motion for stay of enforcement of the 9019 Order and Settlement Agreement pending appeal with the bankruptcy court. FIB was now prepared to offer $250,000 for the estate's claims against the defendants and to pay 20% of any net recovery to the estate. FIB argued that if the stay was not granted, the Settlement Agreement would be consummated before the appeal could be resolved.

In opposition, Debtors represented that the Settlement Agreement had already been fully consummated on June 12, 2015; all funds were disbursed and the releases became effective. Accordingly, argued Debtors, the relief sought in FIB's emergency stay motion and the pending appeal of the 9019 Order was moot.

The bankruptcy court refused to hear FIB's stay motion on an emergency basis, ruling that it could be heard on regular notice. An order to that effect was entered on June 17, 2015.

-14-

FIB ultimately withdrew both its motion for reconsideration of the 9019 Order and request to stay the 9019 Order pending appeal on June 25, 2015, before either were heard by the bankruptcy court.

### c.   Stipulation regarding the avoidance action against defendants

On June 17, 2015, the Committee filed a stipulation by and among Debtors, the Committee and defendants in which it was agreed that all deadlines applicable to the avoidance action would be tolled and prosecution of the action would be stayed for 45 days from the date of the stipulation ("June stipulation").  The June stipulation also provided that if FIB did not obtain a stay pending appeal of the 9019 Order within the 45 days, the avoidance action would be dismissed.  The bankruptcy court approved the June stipulation on June 23, 2015.

### d.   FIB's motion to stay the June stipulation before the bankruptcy court and the BAP

On June 30, 2015, FIB filed a motion for stay of operation of the June stipulation, asking the bankruptcy court to stay enforcement of the June stipulation pending appeal of the 9019 Order.  FIB explained that because the Settlement Agreement had been consummated, it was impossible to obtain a stay pending appeal of the 9019 Order; thus, the emergency stay motion filed June 16 had become moot and was withdrawn on June 25.  FIB conceded that if it was unable to obtain a stay of the 9019 Order, per the June stipulation the avoidance action would be dismissed, "barring any possible prosecution of any avoidance action claims against [the defendants]."  Therefore, FIB requested a stay of the

-15-

June stipulation to prevent the dismissal of the adversary proceeding, "thereby rendering the appeal moot."

The bankruptcy court issued a tentative ruling denying the motion for stay of operation of the June stipulation on July 22, 2015.

After losing at the bankruptcy court, FIB filed its emergency motion for stay of operation of the June stipulation before the BAP. The Panel denied FIB's request on July 27, 2015, determining that FIB had not established it was entitled to a stay.

### 3. Adversary proceeding dismissed

Because FIB was not successful in staying the 9019 Order or the June stipulation, Debtors filed an application before the bankruptcy court to dismiss the avoidance action against the defendants on August 14, 2015. The bankruptcy court entered the dismissal order on August 31, 2015.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(a)(2)(A). We discuss our jurisdiction below.

## III. ISSUES

1. Is the appeal moot?

2. To the extent the appeal is not moot, did the bankruptcy court abuse its discretion in approving the 9019 Motion?

## IV. STANDARDS OF REVIEW

Mootness, which affects our jurisdiction, is an issue we review de novo. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014)(citing Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs), 339 F.3d 782, 787 (9th Cir. 2003)).

-16-

We review the bankruptcy court's decision to approve a settlement for an abuse of discretion. In re A&C Props., 784 F.2d at 1380; Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003). The court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. The appeal of the 9019 Order is constitutionally moot.**

Debtors have moved to dismiss the appeal.[9] Specifically, Debtors contend the appeal of the 9019 Order is "equitably" moot, because in accordance with the Settlement Agreement $200,000 has been disbursed from Christina's and Cindy's attorneys' trust account (which held the daughters' Hanil settlement funds) to Debtors' trust account, $110,209.47 has been disbursed to Christina's and Cindy's attorneys, and the daughters in turn have paid funds to various California taxing agencies respecting the Home. Debtors also argue that even if the Panel reverses the 9019 Order, the statute of limitations has run on the avoidance claims, so no effective relief can be granted. Debtors request that FIB be ordered to pay its attorney's fees of $13,121, because Debtors had to: (1) file an objection to FIB's procedurally defective emergency motion for stay pending appeal; (2) file their statement of issues on appeal; and (3) file the instant motion to

_____

[9] On October 21, 2015, the motions panel entered an order deferring consideration of the motion to dismiss to the merits panel.

-17-

dismiss for what FIB knew was a moot appeal. FIB opposes Debtors' motion to dismiss and their request for attorney's fees.[10]

We lack jurisdiction to hear moot appeals. I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001). We must dismiss the appeal if it is constitutionally moot and may dismiss if we deem it equitably moot. See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33-35 (9th Cir. BAP 2008).

Federal courts may only adjudicate actual cases and controversies. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012). Constitutional mootness derives from Article III of the United States Constitution, which provides that the exercise of judicial power depends on the existence of an actual case or a live controversy. In re PW, LLC, 391 B.R. at 33. Whether a case is constitutionally moot turns on whether the Panel can give the appellant "any effective relief in the event that it decides the matter on the merits in his favor." In re Thorpe Insulation Co., 677 F.3d at 880. If so, the matter is not moot. Id. The party claiming mootness bears the "heavy burden" of demonstrating that "there is no effective relief remaining for a court to provide." Focus Media, Inc. v. Nat'l Broad. Co. Inc. (In re Focus Media,

_____

[10] We reject Debtors' argument that FIB is judicially estopped from asserting the appeal is not moot. Although FIB has wavered on this issue, we are nevertheless bound to confront the issue for the benefit of third parties not before the court for whom the doctrine of equitable mootness was designed. C. Wright, A. Miller & E. Cooper, 13B FEDERAL PRACTICE AND PROCEDURE § 3533.2.3 (3d ed.) (bankruptcy appeals provide numerous examples of the need to protect third party interests pending appeal, such as interests arising from substantial implementation of a reorganization plan, sales of estate property and postpetition extensions of credit).

-18-

Inc.), 378 F.3d 916, 923 (9th Cir. 2004).

We conclude the appeal of the 9019 Order is constitutionally moot. Debtors filed their chapter 11 bankruptcy case on March 6, 2013. Thus, under § 546(a),[11] the deadline for Debtors to bring an avoidance action against the defendants was set to expire in March 2015. On January 28, 2015, the parties entered into a stipulation tolling the applicable statute of limitations to bring such an action to June 6, 2015. Presumably in an abundance of caution should the 9019 Order be reversed by the Panel, the Committee, whose standing has been questioned, filed the avoidance action against the defendants on June 4, 2015, to preserve the estate's claims. The complaint sought relief under §§ 544 and 548. The subsequent June stipulation between the parties extended the limitations period for another 45 days. However, because FIB was unable to procure a stay of the 9019 Order or the June stipulation, the avoidance action was dismissed as agreed by the parties on August 31, 2015.

Section 546(a) requires that an adversary proceeding for an avoidance action under §§ 544 and 548 be filed either within two years after the filing of the bankruptcy petition or within one

---

[11] Section 546(a) provides that:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
    (A)  2 years after the entry of the order for relief; or
    (B)  1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

-19-

year after the appointment of the trustee, whichever is later, so long as that appointment occurred within two years of the filing.[12] The avoidance action has been dismissed, albeit without prejudice. In any event, presumably a new complaint would have to be filed. However, the two-year time limitation under § 546(a)(1)(A) for filing an avoidance action against the defendants has run.[13] Thus, even if we reversed the 9019 Order, because any such action against the defendants is time-barred, we are unable to provide FIB with any effective relief. This is assuming, of course, that FIB could even acquire standing to bring the action. FIB has not offered any argument as to how the dismissed avoidance action could be revived.

Although the doctrine of equitable tolling may be applied to the limitations period set forth in § 546(a), Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1384-85 (9th Cir. 1994), we fail to see how it would apply here. Under the equitable tolling doctrine, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his or her part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts by the party committing the fraud to conceal it from the defrauded party. Id. at 1384 (citing

---

[12] Because Debtors' bankruptcy case has not been closed or dismissed, § 546(a)(2) is not applicable.

[13] Debtors' case was converted to chapter 7 on December 15, 2015. A chapter 7 trustee has been appointed. However, this appointment was not within the two years of Debtors' bankruptcy filing as required by § 546(a)(1)(B). Thus, the trustee is also barred from bringing these same claims against defendants.

_Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson_, 501 U.S. 350 (1991)); _Seattle Audubon Soc'y v. Robertson_, 931 F.2d 590, 595 (9th Cir. 1991), _rev'd on other grounds_, 503 U.S. 429 (1992) (federal courts apply equitable tolling not only in the traditional sense when the defendant's fraudulent concealment prevented the plaintiff from discovering the facts essential to his claims, but when "extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.").

Nothing here was concealed from FIB. The alleged fraudulent transfers were discovered early on in the case and investigated thoroughly by the Committee. The Committee, assuming it even had standing to do so, preserved the estate's claims, if any, by timely filing the avoidance action against the defendants.

Case law in this circuit instructs that equitable tolling is rarely applied and disfavored. The threshold for obtaining equitable tolling is "very high." _Waldron-Ramsey v. Pacholke_, 556 F.3d 1008, 1011 (9th Cir. 2009). _See_ _Cal. Franchise Tax Bd. v. Kendall (In re Jones)_, 657 F.3d 921, 926 (9th Cir. 2011) (holding that equitable tolling is applied "only sparingly" because "Congress must be presumed to draft limitations periods in light of equitable tolling principles which generally apply to statutes of limitations."). Accordingly, we are not persuaded by FIB's argument that equitable tolling should apply in this case. _Hinton v. Pac. Enters._, 5 F.3d 391, 395 (9th Cir. 1993)(burden to plead facts which would give rise to equitable tolling falls upon the party seeking equitable tolling). To the extent FIB argues that equitable tolling should apply to the state law claims, as we

-21-

discuss next, no such claims are available for FIB to pursue.

FIB contends it could pursue the estate's existing state law claims under CAL. CIV. CODE § 3439 because they have been abandoned. We disagree. First, the alleged fraudulent transfer claims against the defendants, including any state law claims, were not abandoned; they were settled and released. FIB has not cited any authority for the proposition that settling the estate's claims equates to an abandonment by the trustee or debtor-in-possession. Second, those claims, if pursued in the bankruptcy court, would fall under § 544 and are time-barred pursuant to § 546(a)(1)(A).

**B.    We deny Debtors' request for attorney's fees.**

Debtors contend they are entitled to attorney's fees of $13,121 incurred as a result of FIB's failure to voluntarily dismiss an "admittedly" moot appeal. Debtors fail to cite under what authority they are seeking fees.

We are able to award attorney's fees on only two bases: (1) for a frivolous appeal under Rule 8020; or (2) as a sanction under Rule 9011. Debtors do not contend the appeal of the 9019 Order was frivolous. In any event, they failed to file the required separate motion under Rule 8020.[14]  That leaves Rule 9011. This rule also requires that a motion "be made separately from other motions or requests and shall describe the specific conduct alleged to violate Rule 9011(b)."  Rule 9011(c)(1)(A).  Debtors did not file a separate motion under 9011, but merely requested

---

[14] Rule 8020(a) provides that "[i]f the . . . BAP determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."

-22-

fees in their motion to dismiss.

We further conclude that the appeal of 9019 Order was not necessarily moot at the time it was filed. It did not clearly become moot until after the avoidance action was dismissed on August 31, 2015, which is after FIB engaged in the activities Debtors complain of and seek compensation for. Accordingly, we see no basis on which to award Debtors their attorney's fees.

## VI. CONCLUSION

Because the appeal of the 9019 Order is constitutionally moot, we DISMISS for lack of jurisdiction. Debtors' request for attorney's fees is DENIED.