FILED

JUN 06 2016

**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| n re: ) | BAP No. CC-15-1371-KiTaL |
| ) | |
| YOUNG W. KONG, ) | Bk. No. 2:11-bk-48629-BR |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| YANG JIN COMPANY, LTD., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| ELISSA D. MILLER, Chapter 7 ) | |
| Trustee; YOUNG W. KONG; BBCN ) | |
| BANK; IL GUN LEE, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on May 19, 2016,
at Pasadena, California

Filed - June 6, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

---

Appearances:    Peter Jazayeri of Jaz, A Professional Legal
Corporation argued for appellant Yang Jin Company,
Ltd.; David John Richardson of SulmeyerKupetz, APC
argued for Elissa D. Miller, Chapter 7 Trustee;
Raymond H. Aver of Law Offices of Raymond H. Aver,
APC argued for appellee Young W. Kong.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Before:   KIRSCHER, TAYLOR and LANDIS,[2] Bankruptcy Judges.

Appellant Yang Jin Co., Ltd. ("Yang Jin") appeals an order approving the chapter 7[3] trustee's compromise with debtor Young W. Kong and the sale of certain stock to Debtor.  Appellee Trustee has moved to dismiss the appeal as moot.  We DENY the motion to dismiss and VACATE and REMAND the settlement order.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Debtor's bankruptcy filing**

Prior to Debtor's bankruptcy filing, Yang Jin obtained a judgment against Debtor for approximately $5.8 million.  Yang Jin is Debtor's largest unsecured creditor.

Debtor filed a skeletal chapter 7 bankruptcy case on September 12, 2011.  Elissa D. Miller was appointed as trustee. In his later-filed schedules and statement of financial affairs, Debtor disclosed an ownership interest in three companies but failed to disclose his interest in a fourth — a 33.33% interest in Lekos Dye & Finishing, Inc. (the "Lekos Stock").

**B.    First settlement between Debtor and Trustee**

Before the settlement at issue, Debtor and Trustee entered into a settlement of various disputes between them.  Trustee had filed an adversary proceeding against Debtor and his non-debtor wife, Clara Kong (now deceased), seeking to avoid an alleged fraudulent transfer of real property from Debtor to Mrs. Kong.

---

[2]  Hon. August B. Landis, Bankruptcy Judge for the District of Nevada, sitting by designation.

[3]  Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Mrs. Kong denied the allegations, contending the real property was her sole and separate property. Debtor then filed a motion to compel abandonment of the estate's interest in his entity GGFB, which Trustee opposed. Mrs. Kong then moved for a temporary restraining order in the fraudulent transfer action, which Trustee also opposed.

Debtor, Mrs. Kong and Trustee then entered into negotiations for a global settlement to resolve all issues between them, including the fraudulent transfer action, the abandonment motion and the TRO motion (the "First Settlement"). Debtor agreed to pay Trustee $90,000; the parties agreed to dismiss all pending actions between them. The First Settlement contained a mutual release clause between the parties and the Kong estate. It also contained an integration clause which stated that it was the entire agreement among the parties and that it superceded all prior and contemporaneous oral and written agreements and discussions.

The bankruptcy court approved the First Settlement on October 1, 2014.

In December 2014, Debtor's counsel emailed Trustee to confirm that the First Settlement included a release of any claim by Debtor's bankruptcy estate to the Lekos Stock. In her response the next day, Trustee stated: "Confirmed. EDM."

**C.   Trustee's sale motion**

Several months later, Trustee filed a motion for order: (1) authorizing sale of the estate's interest in the Lekos Stock, subject to the Nara Bank lien but free and clear of any other creditor's liens or interests; (2) confirming sale to buyer or the highest bidder appearing at the hearing; (3) approving overbid

-3-

procedures; and (4) waiving the 14-day stay under Rule 6004(h) ("Sale Motion"). In the Sale Motion, Trustee explained that after discovering the Lekos Stock, she investigated and found that it had been pledged to Nara Bank as collateral for a loan made to one of Debtor's defunct entities. Because the outstanding loan amount of $4 million exceeded the stock's value, Trustee concluded it had no value for the estate and was proceeding to close the case when approached by buyer, Il Gun Lee, president and 1/3 owner of Lekos.

Trustee proposed to sell the Lekos Stock to Lee for $35,000, which Lee had already tendered to the Trustee. The sale was subject to overbids, with the initial overbid to be at least $5,000 and subsequent bids to be in increments of not less than $2,000 (or $3,000; the motion contains both figures). Trustee asserted that the proposed sale of the Lekos Stock was supported by her sound business judgment and was in the best interest of the estate. Trustee further asserted that the sale price was fair and reasonable given the Lekos Stock had no value over the Nara Bank lien; thus, the proposed sale would provide a clear benefit to the estate. Trustee's declaration in support contained several errors, referencing another debtor in much of it. All creditors, including Yang Jin, received notice of the Sale Motion.

Lee filed a joinder to the Sale Motion, asking that Debtor be barred from participating in the bidding process because of his prior bad-faith conduct. Nara Bank also filed a joinder to the Sale Motion but disagreed with Lee that Debtor should be barred from bidding.

Debtor opposed the Sale Motion on the grounds that the bankruptcy court lacked jurisdiction over the Lekos Stock, which

-4-

Debtor contended was no longer property of the estate based on the mutual release of claims provided for in the First Settlement. Debtor argued that the First Settlement, which had been fully consummated, included the estate's claims to the Lekos Stock. Debtor claimed the Lekos Stock had been specifically discussed between Trustee and Debtor's counsel prior to entering into the First Settlement. It was only after Trustee was satisfied that Nara Bank held a perfected security interest in the Lekos Stock that she agreed to accept the $90,000 settlement payment. She had also confirmed in the December 2014 email, before Debtor had made all of the settlement payments, that any claim by the estate to the Lekos Stock had been released. Debtor contended he would not have agreed to pay Trustee $90,000 if he had known she would take the position that the First Settlement did not include a settlement of any and all claims to the Lekos Stock.

In reply, Trustee maintained that the First Settlement did not include any release of the estate's interest in the Lekos Stock, which she contended was still property of the estate. Trustee maintained that the First Settlement addressed only the fraudulent transfer action, the abandonment motion and claims by and against the parties. Trustee objected to Debtor's attempt to introduce extrinsic evidence to now claim that the estate somehow released its interest in the Lekos Stock.

Trustee admitted "confirming" in the December 2014 email to Debtor's counsel that the estate released its interest in the Lekos Stock. However, she claimed that this was in error. In a follow-up email in April 2015, Trustee advised Debtor's counsel that she had received an offer to purchase the estate's interest

-5-

in the Lekos Stock:

> Ray – this issues [sic] has arisen yet again as I recently received an offer to purchase the estate's interest in the Lekos Stock. I went back to the [First Settlement] agreement and reviewed it again and guess what. The agreement does not in any way deal with Lekos. Therefore, the Lekos' [sic] Stock is still an estate asset subject to the pledge from [Nara Bank]. If you disagree, please point me to any relevant language in the pleading filed with the Court.

Debtor's counsel responded, stating that the estate no longer had an interest in the Lekos Stock as it was sold to Debtor as part of the global settlement between Debtor and the Kong estate. Attorney David Lally, who had previously represented Trustee and Yang Jin in another matter against Debtor and was involved in the prior settlement negotiations, agreed with Trustee; the Lekos Stock was not addressed in the First Settlement nor abandoned, so it remained property of the estate. Lally also disclosed that the First Settlement approved by the bankruptcy court was drafted by Debtor's counsel and it made no reference to the Lekos Stock.

In response to the Sale Motion, Debtor filed an adversary complaint against Trustee and Lee for breach of contract, breach of the covenant of good faith and fair dealing, equitable estoppel, intentional interference with contractual relations and injunctive relief.

**D.    The Sale Motion hearing and the second settlement with Debtor**

Debtor, Trustee and Lee appeared at the Sale Motion hearing. No one appeared on behalf of Yang Jin or for any other creditor. After noting that as a purchaser Lee lacked standing to file a joinder to the Sale Motion, the bankruptcy court announced it was denying Debtor's requested injunctive relief to stop the sale of the Lekos Stock.

-6-

The bankruptcy court noted that it never approved as part of the First Settlement anything involving the Lekos Stock; that issue was never before it. The court characterized Debtor's claim that he was misled as to whether the Lekos Stock was included in the First Settlement as a distinct issue and declined to resolve it at the Sale Motion hearing. In any event, the court considered the Lekos Stock property of the estate. No creditors had ever received notice of any alleged sale of it to Debtor, and the mutual release in the First Settlement did not include it.

The bankruptcy court then pointed out to Trustee the mistakes made in her moving papers for the Sale Motion, particularly in her declaration. Trustee apologized for the mistakes, admitting she was a poor proofreader and had been representing herself for this motion. However, she had counsel appearing at the hearing because she felt "personally attacked," she was "very emotional" about this case and she did not like being sued and having to report it to the U.S. Trustee.

The bankruptcy court then heard from Debtor's counsel, who requested a brief recess to speak to his client. The court agreed to give him ten minutes and encouraged him to discuss a possible settlement. At that point, Lee's counsel asked if the sale was still going forward, to which the court replied: "Oh, absolutely." Hr'g Tr. (Sept. 22, 2015) 16:12-14.

Upon returning after recess, Trustee's counsel informed the court that Trustee and Debtor had reached a settlement and that Debtor's counsel would be reading the terms into the record. As a procedural matter, Trustee's counsel asked the court: if Trustee should just withdraw the Sale Motion; or if the court could

-7-

approve the sale of the Lekos Stock to Debtor on the specific terms agreed amongst the parties; or if a 9019 motion should be drafted, which would cost the estate more money. Before the court responded to those questions, Debtor's counsel read the settlement terms into the record. Debtor would release any and all claims against Trustee respecting the sale of the Lekos Stock. Trustee would sell the Lekos Stock to Debtor. In return, Debtor would pay Trustee $40,000 within two days. Debtor would also dismiss his adversary proceeding against Trustee and Lee with prejudice. The court ultimately concluded that Trustee was withdrawing the Sale Motion, even though the settlement recited in the record provided that if Debtor failed to pay the balance owing within two days, Trustee could proceed with the sale to which Debtor would not object. Id. at 17:21-18:2; 19:12-22; 22:21-25.

Lee's counsel objected, stating that his client wished to overbid Debtor's $40,000 offer and offer $41,000 or whatever the next number was. Id. at 21:6-22:4. The court overruled Lee's objection, stating that he lacked standing as a purchaser with a sale contract subject to court approval.

After hearing Lee's objection, the bankruptcy court approved the settlement between Debtor and Trustee as read into the record (the "Lekos Settlement"). When Trustee's counsel asked if the court was comfortable approving the Lekos Settlement in the context of the Sale Motion, the court said:

> THE COURT: Oh, yes. Yes. Yeah, it is – yes, absolutely. The other creditors in the estate they've all had notice and they didn't even – obviously nobody else really cared. . . . [Y]ou are essentially withdrawing the old motion that was before me and everybody's got notice. I'm not concerned there's anybody else out there, so I will allow it. I think from

-8-

the estate's standpoint it makes a lot of sense and I will approve it.

Id. at 24:1-7, 24:17-22.

The order approving the Lekos Settlement (the "Lekos Order") stated that the Lekos Settlement was approved pursuant to Rule 9019. It further stated that the Lekos Stock was being sold to Debtor under the terms of the instant settlement and remained subject to Nara Bank's lien. Debtor dismissed his adversary proceeding with prejudice two days later. Yang Jin timely appealed the Lekos Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (N). We discuss our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUES

1. Is the appeal moot?

2. Did the bankruptcy court err by approving the Lekos Settlement without notice to creditors under Rule 2002(a)(3)?

3. Did the bankruptcy court abuse its discretion in approving the Lekos Settlement?

## IV. STANDARDS OF REVIEW

We review our jurisdiction, including questions of mootness, de novo. Ellis v. Yu (In re Ellis), 523 B.R. 673, 677 (9th Cir. BAP 2014).

Whether notice was sufficient for due process purposes is reviewed de novo. See Frates v. Wells Fargo Bank, N.A. (In re Frates), 507 B.R. 298, 301 (9th Cir. BAP 2014) ("We review the bankruptcy court's application of procedural rules and whether

-9-

a particular procedure comports with due process de novo.").

We review the bankruptcy court's decision to approve a settlement for an abuse of discretion. Martin v. Kane (In re A&C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986); Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003). The court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

### V. DISCUSSION

**A.    The appeal is not moot.**

Trustee has moved to dismiss this appeal on the basis that it is both constitutionally and equitably moot.[4] Debtor agrees with Trustee's contention that the appeal is equitably moot.

We lack jurisdiction to hear moot appeals. I.R.S. v. Pattullo (In re Pattullo), 271 F.3d 898, 900 (9th Cir. 2001). We must dismiss the appeal if it is constitutionally moot and may dismiss if we deem it equitably moot. See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33-35 (9th Cir. BAP 2008). We conclude this appeal is neither constitutionally moot nor equitably moot. Accordingly, Trustee's motion to dismiss is DENIED.

**1.    Constitutional mootness**

Federal courts may only adjudicate actual cases and

---

[4] On March 11, 2016, the motions panel entered an order deferring consideration of the motion to dismiss to the merits panel.

-10-

controversies. Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 880 (9th Cir. 2012). Whether a case is constitutionally moot turns on whether the Panel can give the appellant "any effective relief in the event that it decides the matter on the merits in his favor." Id. If so, the matter is not moot. Id. The party claiming mootness bears the "heavy burden" of demonstrating that no effective relief remains for the court to provide. Suter v. Goedert, 504 F.3d 982, 986 (9th Cir. 2007). Trustee has failed to meet her burden that this appeal is constitutionally moot.

"Where the order appealed involves the distribution of money and the party who received the funds is a party to the appeal, the appeal is not moot because the appellate court has the power to fashion effective relief by ordering the party to return the money." United States v. Gould (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009), aff'd, 603 F.3d 1100 (9th Cir. 2010). Here, Trustee received funds from Debtor in exchange for the Lekos Stock and dismissal of the adversary proceeding against Trustee and Lee. Both Debtor and Trustee are parties to this appeal. We can fashion effective relief by vacating the Lekos Order, thereby undoing the Lekos Settlement, and order Trustee to return the money to Debtor and Debtor to return the Lekos Stock to Trustee.

While Trustee does not dispute that the money and Lekos Stock can be returned, she does contend the appeal is still moot because the adversary proceeding was dismissed with prejudice and cannot be revived. "Where the asset 'sold' without a stay is a lawsuit and 'disposal' of the asset is a dismissal, the appropriate inquiry is whether the dismissal of the lawsuit could be undone."

-11-

_Suter_, 504 F.3d at 987; _Fitzgerald v. Ninn Worx Sr, Inc._ _(In re Fitzgerald)_, 428 B.R. 872, 881 (9th Cir. BAP 2010). Here, the dismissed "lawsuit" is an action in the bankruptcy court, not the state court over which we have no power. The adversary dismissal is part of the Lekos Settlement and Lekos Order, which we have the power to vacate, and we could also direct the bankruptcy court to vacate the dismissal of the adversary proceeding. Alternatively, the dismissal order could be vacated under Civil Rule 60(b)(5), applicable in the adversary proceeding by Rule 9024, as an order "based on an earlier judgment that has been reversed or vacated."

The cases cited by Trustee regarding undoing a dismissal are inapposite. _N'Genuity Enters. v. Pierre Foods, Inc._, 2010 WL 3023869 (D. Ariz. Aug. 2, 2010), involved a trial court's reluctance to reinstate the plaintiff's claim in an amended complaint where an identical claim in a prior complaint already had been dismissed with prejudice. That is not the situation here. Likewise, _Holdeman v. Devine_, 2007 WL 3254969 (D. Utah Nov. 2, 2007), involved a plaintiff who tried to revive a claim previously dismissed with prejudice. Although the district court noted the fact the claim was dismissed with prejudice in and of itself militated against any determination that it was revivable, more significant was the fact that plaintiff never explicitly sought revival of the claim or made any legal argument for its revival. As a result, the defendants were never on notice that the trial involved such a claim. _Id._ at *3. _Holdeman_ does not add anything beneficial to Trustee's argument.

/ / /

-12-

## 2. Equitable mootness

Equitable mootness arises "when there has been a comprehensive change of circumstances . . . so as to render it inequitable for this court to consider the merits of the appeal." Rev Op Grp. v. ML Manager LLC (In re Mortgs., Ltd.), 771 F.3d 1211, 1214 (9th Cir. 2014) (internal quotation marks and citation omitted) ("Mortgages I"). For an appeal to be equitably moot, "[t]he question is whether the case presents transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." In re Thorpe Insulation Co., 677 F.3d at 880 (internal quotation marks and citation omitted). See In re PW, LLC, 391 B.R. at 33 (courts examine "the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is being appealed."). "Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable." Id.

The Ninth Circuit follows a four-step process to determine whether an appeal is equitably moot:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

In re Thorpe Insulation Co., 677 F.3d at 881. Although Thorpe focused on plan consummation, we think the general principles apply to any equitable mootness analysis.

It is undisputed Yang Jin did not seek a stay of the Lekos

-13-

Order. Trustee contends failure to seek a stay in the face of changing circumstances equitably moots the appeal. In Mortgages I, the Ninth Circuit Court of Appeals recognized the "tension" in Ninth Circuit authority concerning the issue of an appellant's failure to seek a stay and whether that failure conclusively moots an appeal. 771 F.3d at 1215-16 (discussing Suter, 504 F.3d at 990 and Platinum Capital, Inc. v. Slymar Plaza, L.P. (In re Slymar Plaza, L.P.), 314 F.3d 1070, 1074 (9th Cir. 2002) on the one hand, and Thorpe, 667 F.3d at 881 and Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793, 798 (9th Cir. 1981) on the other). What we glean from Mortgages I and other Ninth Circuit authority on this issue is that while an appellant's failure to seek a stay pending appeal, at least without an adequate excuse, may render an appeal equitably moot and require dismissal, "there must also be some subsequent event that would render consideration of the issues on appeal inequitable, and thereby trigger an equitable mootness analysis." The Zuercher Tr. of 1999 v. Kravitz (In re Zuercher Tr. of 1999), 2014 WL 7191348, at *7 (9th Cir. BAP Dec. 17, 2014) (string citation omitted). Importantly, Mortgages I does not stand for the proposition that an appeal is **always** equitably moot if the appellant fails to seek a stay, but only narrow exceptions may exist. 771 F.3d at 1216.

While Yang Jin did not seek a stay of the Lekos Order, it clearly was not dilatory or "sat on its rights" as Debtor contends. Yang Jin contends it did not pursue a stay because of the lack of notice of the Lekos Settlement. Yang Jin first learned about the settlement when the Lekos Order was entered and

-14-

contends it did not understand what happened at the sale hearing until it obtained a transcript. Since the adversary proceeding was dismissed only two days after the Lekos Order was entered, Yang Jin contends it was not practical for it to move for a stay prior to the dismissal, because it could not even articulate the basis for one due to the lack of notice and a transcript, let alone justify the costs associated with embarking on such a nebulous journey.

Given that the exchange of funds and Lekos Stock and the dismissal of the adversary occurred essentially before anyone other than Trustee, Debtor and Lee knew what was going on, we believe Yang Jin has provided an adequate excuse for not seeking a stay of the Lekos Order. Thus, the first Thorpe factor does not weigh in favor of mootness.

As for the second Thorpe factor, the exchange of funds and Lekos Stock has occurred, and the adversary proceeding has been dismissed with prejudice — all facts which weigh in favor of mootness.

The third and fourth Thorpe factors require us to consider the effects on third parties not before the court of any available remedy and whether such remedy would create a difficult and essentially unmanageable situation for the bankruptcy court. Both of these factors weigh against mootness. The transactions at issue here — the exchange of funds and the Lekos Stock — are not complex or difficult to unwind; the parties at issue are before us. Moreover, as we explained above, the adversary proceeding could be revived despite its dismissal with prejudice. In other words, no comprehensive change of circumstances has occurred in

this case to render vacating the Lekos Order inequitable. Therefore, Trustee has failed to meet her burden that this appeal is equitably moot.

With our jurisdiction established, we now turn to the merits of the appeal.

**B.    The bankruptcy court erred when it dispensed with notice to creditors of the Lekos Settlement.**

Yang Jin contends the bankruptcy court erred in approving the Lekos Settlement because notice was not given to creditors. We agree.

Rule 9019(a) states that "after notice and hearing, the court may approve a compromise or settlement." Rule 9019(a) goes on to provide that notice shall be given in accordance with Rule 2002, which provides for twenty-one days' notice of the hearing on a motion to approve a compromise or settlement **"unless the court for cause shown directs that notice not be sent**[.]" See Rule 2002(a)(3) (emphasis added). The purpose of the notice requirement of Rule 2002 is to provide parties with a pecuniary interest in the settlement an opportunity to object to a settlement agreement that is unsatisfactory. Triple E. Transp., Inc. v. Caterpillar, Inc. (In re Triple E Transp., Inc.), 169 B.R. 368, 373 (E.D. La. 1994) (citing Saccurato v. Masters, Inc. (In re Masters, Inc.), 149 B.R. 289, 293 (E.D.N.Y. 1992)); In re W. Point Props., 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000).

Yang Jin argues that notice for a proposed compromise or settlement under Rule 9019 is mandatory. Not so. The notice requirement of Rule 2002(a) is not mandatory and can be waived by the court for "cause" shown. Kowal v. Malkemus (In re Thompson),

-16-

965 F.2d 1136, 1140-41 n.5 (1st Cir. 1992); <u>Advantage Healthplan, Inc. v. Potter</u>, 391 B.R. 521, 550-51 (D.D.C. 2008), <u>aff'd</u>, 586 F.3d 1 (D.C. Cir. 2009); <u>In re Triple E. Transp., Inc.</u>, 169 B.R. at 373; <u>Patel v. Patel (In re Patel)</u>, 43 B.R. 500, 503-04 (N.D. Ill. 1984) (bankruptcy court may waive such notice for "good cause" shown); <u>In re Szabo Contracting, Inc.</u>, 283 B.R. 242, 252 (Bankr. N.D. Ill. 2002); 9 COLLIER ON BANKRUPTCY ¶ 2002.02[6][c] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2012) ("Ordinally, there is no final compromise and settlement without notice, but notice of these hearings may be waived 'for cause shown.'").  If the bankruptcy court did not expressly make findings of cause to waive the notice period, we may find that cause existed as long as the record reflects it.  <u>Advantage Healthplan, Inc.</u>, 391 B.R. at 551; <u>In re Triple E. Transp., Inc.</u>, 169 B.R. at 373 n.8; <u>In re Patel</u>, 43 B.R. at 503; 9 COLLIER ON BANKRUPTCY at ¶ 2002.02[6][c].

Clearly, the bankruptcy court could waive the notice requirement for the Lekos Settlement under Rule 2002(a)(3).  It did not make any findings for why it was dispensing with notice, other than to say that "nobody else really cared," and that it was "not concerned there's anybody else out there."  Hr'g Tr. (Sept. 22, 2015) 14:6-7, 14:19-20.  Unfortunately, somebody else was out there and did care.  Even though the lack of "cause" findings is not fatal if we determine cause existed for the bankruptcy court to dispense with notice, we conclude that cause did not exist in this case and the bankruptcy court abused its discretion in waiving notice of the Lekos Settlement.

While bankruptcy courts have discretion to reduce or

-17-

eliminate the notice period for settlements or compromises, that discretion is limited. Burtch v. Avent, Inc., 527 B.R. 150, 156 (D. Del. 2015) (reversing bankruptcy court's decision to waive notice under Rule 2002(a)(3) where creditor's committee did not receive any notice of the settlement's terms even though the committee had been active in the case); In re Masters, Inc., 149 B.R. at 292-93. In cases where the bankruptcy court was found to have properly dispensed with formal notice requirements under Rule 2002(a)(3) for a compromise or settlement under Rule 9019, generally some exigent circumstance existed where the court needed to act quickly or providing notice to all creditors was unduly burdensome. For example, in In re Patel, the district court affirmed the bankruptcy court's approval of the trustee's compromise with a third party in a fraudulent conveyance action without formal notice to creditors because an important redemption period for an estate asset was about to expire, a deadline over which the court had no control and, if the court did not act, the asset would be lost forever. 43 B.R. at 503-04.

In In re Triple E. Transport, Inc., the debtor's president and a third party had entered into a settlement agreement without court approval. 169 B.R. at 370. Five months later, when the agreement seemed to be working against the debtor's favor, the debtor filed a motion to upset and disallow the agreement on the ground that it did not have court approval. Id. at 371. The bankruptcy court denied the motion and approved the settlement. The district court found that cause existed to waive the notice requirement because: (1) the debtor's president knew that the settlement agreement had to be approved by the bankruptcy court;

-18-

(2) the debtor waited five months before moving to upset and disallow the settlement agreement; (3) in that five-month period the parties had complied with the terms of the settlement; and (4) it would be unduly burdensome and complex to return the parties to their original position. Id. at 373.

Finally, in In re Szabo Contracting, Inc., 283 B.R. at 252-53, the bankruptcy court found cause existed to approve a settlement of the trustee's objection to a creditor's proof of claim without notice to all creditors, because requiring notice to be sent to over 500 creditors for every claim objection settlement would be unnecessarily expensive to the estate and those creditors who objected to the settlement had actual notice of the claim dispute and were given ample opportunity to participate. See also Advantage Healthplan, Inc., 391 B.R. at 550-51 (bankruptcy court had "good cause" for shortening notice of hearing on motion to approve compromise to seven days where settlement of attorney's fee claims for less than amount of attorney's bill was expressly conditioned upon attorney's receipt of reduced fee prior to end of the calendar year, which was prior to expiration of the twenty-day notice period) (applying former twenty-day notice rule).

The facts of this case do not support the bankruptcy court's decision to dispense with any notice to creditors of the Lekos Settlement. No exigent circumstances existed where the court had to act quickly or a valuable asset would be lost forever. Nor does it appear that noticing creditors of the Lekos Settlement would be unduly burdensome or costly to the estate. Trustee offered no basis for cause to dispense with notice other than to say that filing a proper Rule 9019 motion would cost the estate

-19-

money. Granted, it will cost the estate something for Trustee to file the proper motion and notice, assuming a settlement with Debtor is still desired as opposed to a straight sale of the Lekos Stock. However, the minimal cost involved does not outweigh the due process afforded creditors in this case under Rule 9019.

Arguably, Yang Jin could have attended the sale hearing and raised any objections to the proposed Lekos Settlement there (assuming of course it had any inkling that the sale would turn into a settlement). But, the notice requirement in Rule 9019(a) cannot be ignored merely because a proposed settlement is made in open court rather than on papers submitted to the bankruptcy court. In re Masters, Inc., 149 B.R. at 293 (bankruptcy court erred in finding that Rule 9019(a) notice requirement did not apply to settlement agreement because the settlement terms were read into the record in open court after two days of trial and with all relevant parties present and assenting). "Certainly the plain language of the Rule makes no such distinction." Id.

Here, unlike some of the cases discussed above, creditors had no notice whatsoever of any possible settlement between Trustee and Debtor at the sale hearing or what those terms might be even if a settlement at the sale hearing was contemplated. Trustee noticed the matter as a sale of stock to a third party with overbid procedures and that is what creditors expected. The bankruptcy court erred in assuming that because creditors got notice of the Lekos Stock sale (with no objections) that notice of the Lekos Settlement was not necessary. Trustee is wrong in her assertion that notice of the First Settlement somehow served as notice for the Lekos Settlement.

Where creditors have expressed sufficient interest in a bankruptcy case to have their names added to the service list, as did Yang Jin, such creditors have a right to actual notice under Rule 9019(a) and to make objections to any proposed settlement agreement prior to final approval by the bankruptcy court. Id. A twenty-one-day notice of the proposed Lekos Settlement, or even something less than twenty-one days if necessary, could have been given to creditors without catastrophic consequences. Furthermore, and just as troubling, because Lee wished to overbid but was precluded from doing so by the bankruptcy court, it is not clear the Lekos Settlement was even in the best interest of creditors and the estate.

## VI. CONCLUSION

We conclude this appeal is not moot and DENY the motion to dismiss. Because the bankruptcy court did not have "cause" to dispense with notice of the Lekos Settlement to creditors, we VACATE and REMAND the Lekos Order for further proceedings in accordance with this decision.